## Case No. 8,642.

### LYNN v. YEATON.

[3 Cranch, C. C. 182.] [1]

Circuit Court, District of Columbia. Nov. Term, 1827. [2]

EXECUTORS AND ADMINISTRATORS—ASSETS — SALE OF TRUST PROPERTY—PROCEEDS.

If a deed of trust, for the benefit of children, be set aside by a decree in equity, as being fraudulent as to creditors, and the trustee, who is also executor of the grantor, be decreed to sell, and pay the creditors out of the proceeds of the trust property; those proceeds are assets, as to the creditors; and the money, paid to them, is money paid by the executor; and may be recovered by him, as executor, from the person for whose use he paid it.

Assumpsit for money paid, laid out, and expended by the plaintiff, as executor of the will of John Wise, out of the assets, to discharge a debt due by the defendant to Robert Young, for which Wise was surety. Verdict for the plaintiff, subject to the opinion of the court, upon the following case:

John Wise made his will, and made the plaintiff his executor, and afterwards made a deed of trust to the plaintiff of all his property, for the benefit of his children and grandchildren. Robert Young, a creditor of John Wise, brought suit in equity against the cestuis que trust, and the trustee and executor, to set aside the deed as fraudulent as to him; in which such proceedings were had that the court decreed that so much of the funds in the hands of Lynn, as trustee, should be sold by him to pay the debt to Robert Young, the complainant in that suit; and that he should charge the same to the respective cestuis que trust, according to their respective interests in the trust-fund; and that he transfer the residue of the trust-fund to the cestuis que trust, in proportion to their respective interests therein. Under this decree the trustee paid the debt to R. Young, and now brings suit, as executor of John Wise, against W. Yeaton, to refund the same, for the benefit of the cestuis que trust.

Mr. Taylor, for defendant, contended that the money paid by the plaintiff to R. Young, never was assets of the estate of John Wise, and never was in his hands as executor, and therefore he could not, in that character, recover it of the defendant. The money either belonged to him as trustee, or to the cestuis que trust.

Mr. Jones, contra. The deed was fraudulent, and therefore did not prevent the passing of the property to the executor; because the executor represents the creditors, and as to them the deed was void. If there had been no executor, it would not have been necessary for the creditors to have brought their suit in equity. They might at once, have resorted to the grantee, and charged him, at law, as executor de son tort. Barber v. Fox, 2 Saund. 137, note. The effect of the decree is to nullify the deed, and to make the property assets; and the plaintiff, as executor, has a good right to recover from the defendant, the amount of the assets thus applied to his use.

Mr. Taylor, in reply. The deed was good between the parties and those claiming under them. The executor cannot maintain an action, or assert a claim, which the testator could not maintain or assert. The deed was good against subsequent creditors. The testator was estopped by his own deed. The plaintiff could not have been charged at law with this property as assets. If the executor and trustee had not been the same person, the executor could not have recovered this property from the trustee as assets. The plaintiff did not, as executor, pay the money to R. Young. He paid it under the decree, in his character as trustee, and in that character he was decreed to pay it, and to transfer the residue to the cestuis que trust; which he could not have done in his character of executor.

THE COURT (nem. con.) ordered the judgment to be entered up on the verdict for the plaintiff, being of opinion that the money arising from the sales was assets to the extent of the claims of the creditors, and that the plaintiff paid it in his character of executor.

[The defendant brought this suit by writ of error before the supreme court, where the sentence of the court below was sustained. 5 Pet. (30 U. S.) 224.]

---

## Case No. 8,643.

### In re LYON.

[1 N. B. R. 111; [1] Bankr. Reg. Supp. 24; 6 Int. Rev. Rec. 135.]

District Court, S. D. New York. Oct. 7, 1867.

BANKRUPTCY — EXAMINATION — EXCEPTIONS — MOTION TO STRIKE OUT ANSWERS—MOTION TO CERTIFY QUESTIONS TO THE COURT.

In the examination of a bankrupt by creditors, the register will pass upon questions objected to, and formal exceptions being taken, he will, at the close of the testimony, entertain motion to strike out answers or admit excluded questions, and certify the questions to the court.

[In the matter of Isidor Lyon, a bankrupt.]

In this case the register, Edgar Ketchum, certifies the following questions to the court:

Order having been made by consent for the examination of the bankrupt on the 25th day of September, 1867, at 3 o'clock, and the bankrupt being duly sworn and examined, the following questions were asked by Mr. Gray: Question. "Where do you get the means to support your family?" A. "By earning my living. No particular business. Anything I can find. I don't know exactly how long I

---

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Affirmed in 5 Pet. (30 U. S.) 224.]

[1] [Reprinted from 1 N. B. R. 111, by permission.]

have been engaged in that business. I have always made money when I could do so legitimately." Question. "What was the last legitimate act of business you transacted by which you made money?" A. "Today; selling a barrel of spirits, as a broker, not belonging to me." Question. "For whom?" Objected to by the bankrupt's counsel. The register thinks it ought to be answered. If the spirits did belong to another, the subject is ended. If the deponent is in any way mistaken, and the spirits in fact belonged to him, the creditor should be allowed to discover it. Mr. James, the bankrupt's counsel, demands that the question thus made be certified to the judge. Question. "What was the other and last previous transaction to the one mentioned in which you made money?" Mr. James objects to this question on behalf of the bankrupt, on the ground that no inquiry is relevant as to the manner in which he has earned his livelihood, since his adjudication of bankruptcy, unless foundation is laid for imputing to him possession of property which ought to be given up to his assignee. The register thinks the interrogatory a proper one, as tending to discover and ascertain the truth in respect to that which the counsel thus allows. Mr. James demands that the question be certified to the judge.

BLATCHFORD, District Judge. The register will follow the practice established by my decision dated October 1st, 1867 (In re Levy [Case No. 8,298]. The clerk will certify this decision to the register, Edgar Ketchum, Esq.

---

## Case No. 8,644.
### In re LYON.

[7 N. B. R. 182; [1] 4 Chi. Leg. News, 421.]

District Court, D. Minnesota. 1872.

SALE OF PERSONAL PROPERTY— PASSING OF TITLE —ASSIGNEE IN BANKRUPTCY—DISCRETION.

A written contract provided that the ownership of personal property was not to pass until the stipulated price had been paid. *Held,* that under the contract the ownership would remain in the vendor although the vendee had possession, and all but a small portion of the money due had been paid; that if the assignee in bankruptcy shall deem it for the interest of the creditors, he may pay the balance due to the vendor and hold the property for the benefit of the estate.

[Cited in Adams v. Lee, 64 N. H. 422, 13 Atl. 787.]

[In the matter of J. H. Lyon, a bankrupt.]

NELSON, District Judge. A petition is presented by C. Schulenberg, who alleges that he is the owner of certain property now in the possession of the messenger or assignee in bankruptcy in this case, and praying that by an order of this court he may have the same restored to him. This petition was filed on the twenty-sixth day of June, eighteen hundred and seventy-two, and by an arrangement between the solicitors an answer was filed upon the same day by the creditors, who commenced the proceedings in invitum against the bankrupt. An agreed statement of facts was also filed, and the case was submitted upon written briefs for the decision of the court. The proceedings are somewhat informal, and I should not be inclined to consider the case as presented by the pleadings, on the ground that the solicitors had mistaken the practice, were I not assured that the parties on both sides would submit to the decision rendered and did not desire an appeal.

The petitioner claims, and the agreed state of facts so shows, that the possession of the property in controversy in Lyon, the bankrupt, was by virtue of an agreement between the latter and him, to sell it upon certain conditions precedent to be performed by the vendee before any right of ownership passed from the vendor: that the vendee had failed to perform such conditions, by the non-payment of the purchase money as it fell due. The creditors deny that the possession of the property was delivered under the agreement, and claim that there was a waiver of the original agreement (which was in writing,) and that by the acts of the petitioner, who was the vendor, the ownership passed at the time of delivery, as well as the mere possession, and was so intended. It will be necessary to a proper understanding of the controversy to recur to the agreement, which is as follows: "Whereas, the undersigned, Charles Schulenberg, of Detroit, Michigan, of the first part, has agreed to sell to J. H. Lyon, of St. Paul, Minnesota, of the second part, the following property, that is to say, three * * * billiard tables * * * all for the sum of twelve hundred dollars and ten cents, as follows: (here follow the time and amounts of the different payments) and for which sums unpaid the party of the second part has given to the party of the first part his notes, and upon the payment thereof, and performing all other conditions on his part herein mentioned, the party of the first part will execute and deliver a good and valid bill of sale, as of this date, for said property. And the party of the second part agrees * * * to have insured and kept insured for the use and benefit of the party of the first part, the said property, for the full amount at all times unpaid therefor. (Here follow other conditions not material.) And it is further agreed that the party of the second part may have possession of said property and retain the same, if the above conditions and agreements on his part are performed. * * * And it is distinctly agreed and understood, that the title to said property and right thereto is retained by the party of the first part, and does not pass by this agreement until the purchase money * * * is fully paid, according to above terms, and any payments

[1] [Reprinted from 7 N. B. R. 182, by permission.]